**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ALLEVA MEDICAL SUPPLY CO.** | **CIVIL ACTION** |
| **v.** | **NO. 18-2495** |
| **DEVON MEDICAL PRODUCTS (JIANGSU), LTD., et al.** | |
| **v.** | |
| **MAX CHOI, et al.** | |

Baylson, J.                                                            June 26, 2020

## MEMORANDUM RE: ASCENT PARTIES' MOTION FOR SUMMARY JUDGMENT

### I.      Introduction

This case involves several different disputes between and among three medical-device businesses: Alleva, Ascent, and Devon.  These disputes were also at issue in a sibling lawsuit in the Montgomery County Court of Common Pleas (the "Montgomery County Action").  There, one of the two Devon Parties[1] and the principal of both obtained default judgments against the Ascent Parties. [2]  The Ascent Parties, third-party defendants here, now move for summary judgment, arguing that the state-court default judgments make the Devon Parties' claims here *res judicata*.

---

[1] Devon Medical Products (Jiangsu) Ltd. ("DMJ") and Devon MD, LLC ("DMD").  Other Devon entities are defendants in this litigation, but only DMJ and DMD are third-party plaintiffs. According to the Devon Parties, Devon Medical Products, Inc. is "defunct" and Devon Medical, Inc. and Devon Safety Products, Inc. are "inactive."  ECF 59 ("Answer to FAC") ¶ 7.

[2] Ascent Healthcare, LLC ("Ascent"), and Charles Ross ("Ross"), President of Ascent, ECF 59 ("Counterclaim & Third-Party Claims") ¶ 23.

The Devon Parties respond that one of the default judgments never became "final" for *res judicata* purposes, that the issues and claims here meaningfully differ from the claims there, and that the parties meaningfully differ.  None of these arguments are enough to defeat the Ascent Parties' summary judgment motion.

For the reasons that follow, the Ascent Parties' Motion for Summary Judgment will be granted.

## II.   <u>Background</u>

As this is a motion for summary judgment, the Court must view the record "in the light most favorable to the nonmovant, drawing reasonable inferences in its favors."   <u>See</u> <u>In re Chocolate Confectionary Antitrust Litig.</u>, 801 F.3d 383, 396 (3d Cir. 2015)

On June 18, 2018, DMJ and Dr. Bennett (its principal shareholder, and DMJ and DMD's "principal") filed a lawsuit in the Court of Common Pleas of Montgomery County, Pennsylvania against the Ascent Parties and the Alleva Parties.[3]  Answer to FAC ¶ 7; ECF 91-1 (Devon SUMF) ¶ 1, 8.

According to the allegations in that lawsuit, Ascent had a contract with DMJ (the "Ascent-Devon contract") that required Ascent to either pay $100,000 to DMJ, or transfer to DMJ all of its intellectual property and regulatory filings and registrations connected to its "negative pressure wound therapy" ("NPWT") medical devices.  Devon SUMF ¶¶ 3–4.  But Ascent neither paid the $100,000 nor transferred its intellectual property rights in the NPWT devices.  <u>Id.</u> ¶ 5.  Instead, the

---

[3] Alleva Medical Co., Alleva Medical Supply Ltd., Alleva Medical Limited (together, "Alleva"); and Max Choi, head of Alleva.

Ascent Parties transferred the intellectual property rights to Alleva.  Id. ¶ 6.  Alleva then sent a letter claiming that it now owned the rights to the "extriCARE" NPWT device to potential customers for the device.  Id. ¶ 7.  The recipients of that letter included companies that the Devon Parties were doing business with.  Id. ¶ 7.  DMJ and Dr. Bennett alleged that this did them considerable damage.  Id. ¶ 8.

The Montgomery County Action had five counts.  Id. ¶ 9.  In those five counts, DMJ and Dr. Bennett claimed that (I) Ascent breached the Ascent-Devon contract; that (II) the other defendants had tortuously interfered with the Ascent-Devon contract; that (III) all defendants had tortuously interfered with DMJ and Dr. Bennett's business with prospective extriCARE customers; and that (IV) the defendants had variously defrauded it or conspired to defraud it, and that (V) the defendants converted its rights to the NWPT devices or conspired to do the same.  Id. ¶¶ 10–14.

The Ascent Parties did not answer the complaint in the Montgomery County Action.  Id. ¶ 15.  On February 8, 2019, DMJ and Dr. Bennett requested and obtained default judgments against them.  Id. ¶ 16.  Damages against Ascent were set for $452,527.50.  Id. ¶ 17.  Damages against Ross have not been set in the Montgomery County Action.  Id. ¶ 18.  At some point after April 2019, DMJ and Dr. Bennett sold the right to pursue those judgments to an unrelated entity for $50,000.  ECF 88-8 (MSJ Br. Ex. F).  It appears that the Ascent Parties have since satisfied their new creditor.  ECF 92-2, 92-3 (MSJ Rep. Br. Exs. 1, 2).

All the while, this lawsuit had been proceeding.  This lawsuit actually began a few days before the Montgomery County Action, on June 14, 2018, when Alleva sued the Devon Parties here.  ECF 1.  Roughly one month later, the Devon Parties answered, and filed counterclaims that

3

swept the Ascent Parties into this litigation.  ECF 11.  In January, the Ascent Parties defaulted here.  Following some discovery, Alleva filed the First Amended Complaint in April 2019, ECF 58r, and the Devon Parties filed Amended Counterclaims and Third-Party Claims the same day, ECF 62, and a new Answer and Third Party Complaint a few days later, ECF 59.  The filing of the Amended Counterclaims and Third-Party Claims negated the Ascent Parties' default.  The Ascent Parties answered the Devon Parties' Amended Third-Party Claims in early May.  ECF 79.

Those counterclaims included a new third-party defendant, Bradley Weber, CPA, the Devon Parties' CFO.  Devon SUMF ¶¶ 22–23.  Weber allegedly helped facilitate the Alleva and Ascent Parties' conspiracy against the Devon Parties by encouraging the conspiracy and stealing trade secrets such as the Devon Parties' customer list for the Alleva and Ascent Parties' benefit. Id. ¶ 22, 24–29.

The Devon Parties' Amended Third-Party Claims contain ten counts involving the Ascent Parties.  In Count II, the Devon Parties allege that that the Ascent Parties aided and abetted Weber's breach of his fiduciary duties.  Id. ¶ 31.  In Count III, DMJ alleges that Ascent breached the Ascent-Devon contract.  Id. ¶ 32.  In Count IV, DMJ alleges that Ross, the Alleva Parties, and Weber tortuously interfered with the Ascent-Devon contract.  Id. ¶ 33.  Counts V and VI are statutory and common-law unfair competition claims against Weber and the Alleva and Ascent Parties for allegedly conspiring to steal and use the Devon Parties' trade secrets.  In Count VII, the Devon Parties allege that Weber and the Alleva and Ascent Parties tortuously interfered with its existing and prospective business relationships by trying to lure customers away.  Count VIII is a civil conspiracy claim against Weber and the Alleva and Ascent Parties for the same alleged conduct.

4

Count IX is a common-law "constructive trust" claim for all monies obtained through the alleged conspiracy.  Counts X and XI seek declaratory and injunctive relief with respect to the intellectual property rights and the alleged conspiracy.

On June 28, 2019, with discovery still ongoing, the Ascent Parties moved for summary judgment on the Devon Parties' claims against them.  ECF 88.  The Devon Parties responded on July 26, 2019.  ECF 91.  The Ascent Parties replied on August 1, 2019.  ECF 92.

## III.   Legal Standards

### a.   Summary Judgment

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the nonmoving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, by "citing to

5

particular parts of materials in the record," set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1)(A); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986) (The nonmoving party "must do more than simply show that there is some metaphysical dispute as to the material facts"). Summary judgment is appropriate if the adverse party fails to rebut the motion by making a factual showing "sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. <u>Anderson</u>, 477 U.S. at 255.

  b. <u>Res Judicata Under Pennsylvania Law</u>

  "*Res judicata,* or claim preclusion, is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action." <u>Balent v. City of Wilkes-Barre</u>, 542 Pa. 555, 563 (1995). "Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action." <u>Id.</u>

  Under Pennsylvania law,[4] the application of claim preclusion requires "the concurrence of four conditions between the present and prior actions: (1) identity of issues; (2) identity of causes of action; (3) identity of parties or their privies; and (4) identity of the quality or capacity of the parties suing or being sued." <u>Radakovich v. Radakovich</u>, 846 A.2d 709, 715 (Pa. Super. Ct. 2004) (citing <u>Yamulla Trucking & Excavating Co. v. Justofin</u>, 771 A.2d 782, 784 (Pa. Super. Ct. 2001)).

---

[4] Pennsylvania law applies because the prior litigation took place in Pennsylvania's state courts. <u>See, e.g.,</u> <u>Allegheny Int'l v. Allegheny Ludlum Steel Corp.</u>, 40 F.3d 1416, 1429 (3d Cir. 1994).

"[R]es judicata will 'not be defeated by minor differences of form, parties or allegations' where the 'controlling issues have been resolved in a prior proceeding in which the present parties had an opportunity to appear and assert their rights.'" Massullo v. Hamburg, Rubin, Mullin, Maxwell & Lupin, P.C., 1999 WL 313830, at *5 (E.D. Pa. May 17, 1999) (Giles, J.) (quoting Helmig v. Rockwell Mfg. Co., 131 A.2d 622, 627 (Pa. 1957)).

## IV.   **Discussion**

This court does not offer a forum for parties to relitigate unsatisfactory results in state court proceedings. It is even less open to attempts to relitigate *satisfactory* results in state court proceedings. Because the Amended Third-Party Claims are the Devon Parties' attempt to relitigate their prior state-court victory, the Ascent Parties are entitled to summary judgment on the Amended Third-Party Claims.

Summarizing the course of the two lawsuits makes the repetitive nature of the Amended Third-Party Claims aimed at the Ascent Parties. In June of 2018, DMJ and Dr. Bennett sued in state court to obtain relief against the Alleva and Ascent Parties for two alleged wrongs: conspiring to deny the Devon Parties the benefit of the Ascent-Devon Contract, and soliciting the Devon Parties' customers. The Ascent Parties defaulted in early 2019, and DMJ and Dr. Bennett won a substantial default judgment against Ascent itself. In the meantime, discovery here led the Devon Parties and Dr. Bennett to believe that Weber had helped the Alleva and Ascent Parties. In April of 2019, the Devon Parties filed their Amended Third-Party Claims here. The Amended Third-Party Claims alleged that Weber and the Alleva and Ascent Parties had conspired to deny the Devon Parties the benefit of the Ascent-Devon Contract, solicit the Devon Parties' customers, and

steal trade secrets from the Devon Parties.  After filing the Amended Third-Party Claims here, the Devon Parties let the Alleva Parties out of the Montgomery County Action and sold the rights to pursue damages against the Ascent Parties to an unrelated party for $50,000.

In other words, the Devon Parties were litigating the same claims in the Montgomery County Action as here.  They won against the Ascent Parties there.  Then they uncovered facts here suggesting that the Alleva and Ascent Parties had engaged in more far-reaching malfeasance than they had previously understood.  Rather than pursuing those facts in the Montgomery County Action—which would have required setting aside a nearly half-million-dollar default judgment and another default—they decided to pursue them here.  But the Devon Parties, having preserved the two defaults in the Montgomery County Action, cannot pretend they do not exist here.  Their claims against the Ascent Parties are therefore *res judicata*.

The Devon Parties have three arguments otherwise.  None are persuasive enough to defeat summary judgment.

The Devon Parties' first argument against summary judgment is that they never obtained a final judgment against Ross.  The parties agree that a final default judgment is a preclusive final judgment, as they must, <u>see, e.g.</u>, <u>Fox v Gabler</u>, 626 A.2d 1141, 1143 (Pa. 1993) ("[J]udgment by default is *res judicata* and quite as conclusive as one rendered on a verdict after litigation insofar as a defaulting defendant is concerned.").  However, the Devon Parties claim that Ross's default is not a preclusive final judgment because the state court never awarded a precise amount of

damages.[5]  It appears, however, that the state-court default judgment has been satisfied.  That satisfaction means that the default judgment has become final.  See Kramer v. Kubicka Civil Action No. 05-2621, 2006 WL 1644825, at *3 (D.N.J. June 9, 2006) (Martini, J.) ("[T]he rule in Pennsylvania is that satisfaction of a default judgment prevents any future litigation of defenses to both the default and any underlying claims.")  Moreover, and perhaps more importantly, DMJ and Dr. Bennett sold the right to pursue the judgment before damages were determined.  The Devon Parties cannot complain that damages were never computed after DMJ and Dr. Bennett sold the right to pursue those damages.  Otherwise, there would be ample opportunities for clever plaintiffs to get around *res judicata*.

The Devon Parties' second argument against summary judgment is that there is no identity of the issues or causes of action, because this federal litigation includes a new conspiracy involving Weber.  That conspiracy, according to the Devon Parties, was not and could not have been litigated in the Montgomery County Action because it was only uncovered in this action.  However, there are two problems with this argument.  Individually, each problem is serious.  Together, they are fatal.

The first problem is that it appears that the alleged conspiracy involving Weber and the theft of the Devon Parties' trade secrets is nothing but the old conspiracy to breach the Ascent-Devon contract, convert the NPWT intellectual property, and interfere with the Devon Parties' customer relationships.  The addition of Weber as an alleged conspirator, and the addition of the

---

[5] They do not dispute that the judgment against Ross would be final but for the damages calculation.  Nor do they dispute that they obtained a final judgment against Ascent.

alleged theft of the Devon Parties' customer lists and other trade secrets as a means and object of the conspiracy, does not differentiate the issues or causes of action in the Montgomery County Action from those here.  Discovering that a known conspiracy involved a previously unknown conspirator, method, or object is not the same as discovering a previously unknown conspiracy.

The second problem is that the "new" conspiracy could have been discovered and litigated in the Montgomery County Action.  It seems that discovery in the Montgomery County Action would have revealed Weber's alleged malfeasance just like discovery here did.  The Devon Parties provide no reason for the Court to believe otherwise.  And whether the Devon Parties discovered the alleged malfeasance there or here, they could have pursued their "new" claims in the Montgomery County Action rather than here.  At the time they filed the Amended Third-Party Claims, the Devon Parties had not yet discontinued the Montgomery County Action as to the Alleva Parties or sold their rights to the judgments against the Ascent Parties.  With the Alleva Parties still defendants in that litigation, and damages not yet calculated against Ross, there was no final judgment foreclosing the amendment of DMJ and Dr. Bennett's complaint.  Cf. 210 Pa. Code Rule 341(b) (defining final order as one that "disposes of all claims and of all parties," or that is separately deemed final per Rule 341(c)).  And since DMJ and Dr. Bennett could still amend their complaint in the Montgomery County Action, they could have raised their "new" conspiracy theory there instead of here.

In other words, the issues and causes of action in the Amended Third-Party Claims hew closely to the issues and causes of action in the Montgomery County Action, and could have been

10

discovered and litigated in the Montgomery County Action. This is enough for the conclusion that there is an identity of the issues and causes of action for *res judicata* purposes.

The Devon Parties' third and final argument against summary judgment is that there is no identity of parties because DMD was not a party to the Montgomery County Action. They concede that the parties need not be precisely identical for *res judicata* if the parties to the prior proceeding adequately represent the nonparty's interest in the prior proceeding. They maintain, however, that Dr. Bennett could not have adequately represented DMD's "interest in regard to the Ross/Weber/Ascent/Choi/Alleva conspiracy, because the conspiracy was not discovered until later." ECF 91 (MSJ Opp. Br.) at 16. That argument, however, is simply a repackaged version of the Devon Parties' argument that the issues and causes of action differ, and is flawed in the same ways. It is also worth noting that DMJ and Dr. Bennett could have amended the complaint in the Montgomery County Action to add DMD as a party there.

The Amended Third-Party Claims were or could have been litigated in their entirety in the Montgomery County Action. DMJ and Dr. Bennett won their judgment and, knowing that there might be additional claims, causes of action, defendants, or plaintiffs, sold it. The Devon Parties cannot now win another judgment here. The Ascent Parties are entitled to summary judgment on *res judicata* grounds.

## V.  <u>Conclusion</u>

For the foregoing reasons, the Ascent Parties' Motion for Summary Judgment will be granted. An appropriate Order follows.

11

O:\CIVIL 18\18-2495 MeduScientific v Devon Med Products\18cv2495 SJ Memo.docx